**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| THOMAS WILSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Case No.:     3:13-CV-00054-JVB-CAN** |
| v. | ) |
| | ) **Judge Joseph S. Van Bokkelen** |
| GRAND TRUNK WESTERN RAILROAD | ) |
| COMPANY, a corporation, successor to | ) |
| Grand Trunk Western Railroad Inc., | ) **PLAINTIFF DEMANDS** |
| a corporation, | ) **TRIAL BY JURY** |
| | ) |
| CHEVRON PRODUCTS COMPANY, | ) |
| a division of CHEVRON USA, INC., | ) |
| a corporation, | ) |
| | ) |
| DeBRUCE GRAIN, INC., a corporation, | ) **FIRST AMENDED COMPLAINT** |
| | ) |
| GAVILON GRAIN LLC, a corporation, | ) |
| | ) |
| LAKE'S FARM SERVICE, LLC., | ) |
| a corporation, or in the alternative | ) |
| LAKE'S FARM SERVICE, INC., | ) |
| a corporation, | ) |
| | ) |
| HELENA CHEMICAL COMPANY, | ) |
| a corporation, | ) |
| | ) |
| SPECIALIZED STAFFING SOLUTIONS, | ) |
| LLC, a corporation; or in the alternative | ) |
| SPECIALIZED STAFFING SOLUTIONS, | ) |
| INC., a corporation, | ) |
| | ) |
| CHICAGO SOUTH SHORE & SOUTH | ) |
| BEND RAILROAD, an affiliate of | ) |
| ANACOSTIA & PACIFIC COMPANY, | ) |
| a corporation; alternatively sued herein | ) |
| as THE CHICAGO, LAKE SHORE & SOUTH | ) |
| BEND RAILWAY CO., a corporation, | ) |
| | ) |
| SHRIEVE CHEMICAL COMPANY, a | ) |
| a corporation, | ) |
| | ) |
| DeBRUCE FERTILIZER, INC., | ) |
| a corporation, | ) |
| | ) |
| Defendants. | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW

The plaintiff, THOMAS WILSON, by his attorneys, Harrington, Thompson, Acker & Harrington, Ltd., complaining of the defendants, GRAND TRUNK WESTERN RAILROAD COMPANY, a corporation, successor to Grand Trunk Western Railroad Inc., a corporation ("GTW"); CHEVRON PRODUCTS COMPANY, a division of CHEVRON USA, INC., a corporation ("CHEVRON"); DeBRUCE GRAIN, INC., a corporation, ("DeBRUCE GRAIN"); GAVILON GRAIN LLC, a corporation ("GAVILON GRAIN"); LAKE'S FARM SERVICE, LLC., a corporation, or in the alternative LAKE'S FARM SERVICE, INC., a corporation (collectively identified herein as "LFS"); HELENA CHEMICAL COMPANY, a corporation ("HELENA"); SPECIALIZED STAFFING SOLUTIONS, LLC, a corporation; or in the alternative SPECIALIZED STAFFING SOLUTIONS, INC., a corporation (collectively identified herein as "SSSL"); CHICAGO SOUTH SHORE & SOUTH BEND RAILROAD, an affiliate of ANACOSTIA & PACIFIC COMPANY, a corporation, ("CSS RR"), alternatively sued herein as THE CHICAGO, LAKE SHORE & SOUTH BEND RAILWAY CO., a corporation;  SHRIEVE CHEMICAL COMPANY, a corporation ("SHRIEVE"); and DeBRUCE FERTILIZER, INC., a corporation ("DeBRUCE FERTILIZER"); respectfully states:

### COUNT I
#### (Federal Employers' Liability Act – Negligence)

1.     The cause of action in Count I is brought against the GTW under the Federal Employers' Liability Act, Title 45 US Code §§51-60 for the personal injuries and other damages sustained by THOMAS WILSON on June 17, 2011.

2.     Subject matter jurisdiction for the plaintiff's claim against the GTW under the Federal Employers' Liability Act exists pursuant to 28 USC §1331 and 45 U.S.C. §51, *et seq*.

3.     On June 17, 2011, and at all times alleged herein, the GTW was doing business as a common carrier for hire, engaged in interstate commerce by rail in various states of the United States, including the State of Indiana and the State of Michigan.

4.     On June 17, 2011, the GTW  was doing business in the State of Indiana and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

5.     On June 17, 2011, the plaintiff, THOMAS WILSON, was employed by the GTW as a carman and his duties were in furtherance of interstate commerce.

6.     On June 17, 2011, THOMAS WILSON was working in the GTW Battle Creek rail yard.

7.     At the time and place aforesaid, THOMAS WILSON was acting within the course and scope of his employment with the GTW and his duties were in furtherance of interstate commerce.

8.     At the time and place aforesaid, THOMAS WILSON was exposed to, and inhaled fumes from a rail car that had been transported to the GTW Battle Creek rail yard.

9.     The rail car that was emitting fumes at the time and place aforesaid was identified as CPDX rail car #102012.

10.     On and prior to June 17, 2011, the aforesaid rail car was used to transport hazardous materials, including anhydrous amonia.

11.     On and prior to June 17, 2011, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

12.     On and prior to June 17, 2011, fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

13.     On and prior to June 17, 2011, the GTW had a duty to exercise ordinary care to provide THOMAS WILSON with a reasonably safe place to work; to conduct outbound and inbound inspections of rail cars transported on its line of tracks and to warn employees about the presence of rail cars that contained hazardous materials.

14.     In addition, the GTW had a duty to comply with the Federal Safety Appliance Act, 49 USCA §20101 *et.seq*., the Code of Federal Regulations 49 CFR, Part 215 Railroad Freight Car Safety Standards; the Code of Federal Regulations, 49 CFR Subchapter C - Hazardous Materials Regulations, Parts 171 through 179 and the standards, recommendations and guidelines in Appendix U of the AAR Manual of Standards and Recommended Practices for the shipment of hazardous materials by rail.

15.     At the time and place aforesaid, the GTW violated the Federal Employers' Liability Act in one or more of the following respects:

a.     In failing to provide a reasonably safe place to work.

b.     In failing to use reasonably safe procedures in its train operations.

c.     In failing to inspect, maintain and repair its railroad cars.

d.     In keeping on its line a railroad car that leaked toxic fumes.

e.     In failing to conduct an inspection of the rail cars accepted in interchange to determine if any of the cars were emitting toxic fumes.

f.     In failing to expedite the movement of a rail car that was leaking toxic fumes to a safe location, as required by 49 CFR 174.14.

g.      In failing to comply with 49 CFR Subchapter C - Hazardous Materials Regulations, Part 174 - Carriage by Rail, by accepting a rail car in interchange that the GTW knew, or should have known would subject its employees to injury from inhalation of toxic fumes.

h.      In requiring employees to work in an area where a rail car was emitting toxic fumes.

i.      In failing to segregate a rail car that was leaking toxic fumes, as required by 49 CFR Subpart D - General Segregation Requirements.

j.      In failing to conduct an inspection of rail cars accepted and released for shipment into interstate commerce, in violation of 49 CFR §215.15

k.      In failing to conduct an inspection of the rail cars accepted in interchange, in violation of 49 CFR 215.13 when an inspection would have revealed a leak in CPDX rail car #102012.

l.      In failing to comply with the safety statutes in the Safety Appliance Act, 49 USCA Sec. 20101 *et. seq*.

m.      In failing to comply with the safety regulations in the Code of Federal Regulations, 49 CFR Subchapter C - Hazardous Materials Regulations, Parts 171 through 179.

n.      In failing to ensure compliance with 49 CFR Subchapter C, Part 173, Shippers - General Requirements For Shipment and Packaging.

o.      In failing to comply with 49 CFR 174.1.

p.      In failing to comply with 49 CFR 174.3.

q.      In failing to comply with 49 CFR 174.5.

r.      In failing to comply with 49 CFR 174.9.

s.      In failing to comply with 49 CFR 174.16.

t.      In failing to comply with 49 CFR 174.20.

u.      In failing to comply with the standards, recommendations and guidelines in Appendix U of the AAR Manual of Standards and Recommended Practices for the shipment of hazardous materials by rail.

16.     On June 17, 2011, THOMAS WILSON sustained various injuries from inhaling toxic fumes, including disability, pain and suffering, medical expenses, wage losses, an impaired earning capacity and other damages supported by the evidence and permitted by law, all resulting in whole or in part from one or more violations of the Federal Employers' Liability Act, as alleged herein.

Wherefore, the plaintiff, THOMAS WILSON, prays for judgment against the defendant, GTW, in a dollar amount sufficient to satisfy the jurisdictional limitations of this Court, plus whatever additional amount the Court and the jury shall deem proper as compensatory damages for personal injuries and pecuniary losses as permitted by law under the FELA, plus the costs of this lawsuit and other recoverable damages.

**Count II**
**(Federal Employers' Liability Act -- Strict Liability)**

1-16.   The plaintiff, THOMAS WILSON, adopts and re-alleges paragraphs 1 through 16 of Count I as paragraphs 1 through 16 of Count II as though fully set forth herein.

17.     The regulations in the Code of Federal Regulations, as identified in Count I, are safety statutes within the meaning of 45 USC §53 and 45 USC §54a.

18.     The violation of a safety regulation in the Code of Federal Regulations by a railroad employer engaged in interstate commerce is *negligence per se* under the FELA.

19.     The safety statutes in the Federal Safety Appliance Act, as identified in Count I, are safety statutes within the meaning of 45 USC §53 and 45 USC §54a.

20.     The violation of a safety statute in the Federal Safety Appliance Act by a railroad employer engaged in interstate commerce is *negligence per se* under the FELA.

21.     One or more violations of the Code of Federal Regulations and/or the Federal Safety Appliance Act, as alleged in Count I, contributed, in whole or in part, to the injuries and other damages sustained by THOMAS WILSON on June 17, 2011, including disability, pain and suffering, medical expenses, wage losses, an impaired earning capacity and other damages supported by the evidence and permitted by law.

WHEREFORE, the plaintiff, THOMAS WILSON, prays for judgment against the defendant, GTW, in a dollar amount sufficient to satisfy the jurisdictional limitations of this Court, plus whatever additional amount the Court and the jury shall deem proper as compensatory damages for personal injuries and pecuniary losses as permitted by law under the FELA, plus the costs of this lawsuit and other recoverable damages.

## COUNT III
### (Shippers Negligence)

1.     Pursuant to Rule 20(a) of the Federal Rules of Civil Procedure, the defendants, the defendants, CHEVRON PRODUCTS COMPANY, a division of CHEVRON USA, INC. ("CHEVRON"); DeBRUCE GRAIN, INC., a corporation, ("DeBRUCE GRAIN"); GAVILON GRAIN LLC, a corporation ("GAVILON GRAIN"); LAKE'S FARM SERVICE, LLC., a corporation, or in the alternative LAKE'S FARM SERVICE, INC., a corporation (collectively identified herein as "LFS"); HELENA CHEMICAL COMPANY, a corporation ("HELENA"); SPECIALIZED STAFFING SOLUTIONS, LLC, a corporation; or in the alternative SPECIALIZED STAFFING SOLUTIONS, INC, a corporation (collectively identified herein as "SSSL"); CHICAGO SOUTH SHORE & SOUTH BEND RAILROAD, an affiliate of ANACOSTIA & PACIFIC COMPANY, a corporation, ("CSS RR"), alternatively sued herein as THE CHICAGO, LAKE SHORE & SOUTH BEND RAILWAY CO., a corporation;

SHRIEVE CHEMICAL COMPANY, a corporation ("SHRIEVE"); and DeBRUCE FERTILIZER, INC., a corporation ("DeBRUCE FERTILIZER") have been joined as defendants in this action because there are common questions of law and fact involving the plaintiff's claims against the GTW, as alleged in Counts I and II, and the plaintiff's claims against the parties named as defendants in Count III.

2.     The cause of action alleged in Count III is pled in addition to and/or in the alternative to the claims against the GTW in Counts I and II pursuant to Rule 8 of the Federal Rules of Civil Procedure, and arises out of the same transaction or occurrence that is the subject of the plaintiff's claims in Count I and Count II.

3.     Supplemental jurisdiction as to the defendants, CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; CSS RR; SHRIEVE and DeBRUCE FERTILIZER is invoked under 28 USC §1367(a), the Court having original jurisdiction in Count I and Count II pursuant to 45 USC §56 and 28 USC §1331, and the claims in Count III being so related to the original jurisdiction in Count I and Count II as to form a part of the same case.

**<u>CHEVRON</u>**

4.     On June 17, 2011, the defendant, CHEVRON PRODUCTS COMPANY, a division of CHEVRON USA, INC. ("CHEVRON"), was a corporation, authorized to do business in the State of Indiana.

5.     On June 17, 2011, CHEVRON was doing business in the State of Indiana, maintained a registered agent in the State of Indiana, and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District

Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

6.      Prior to June 17, 2011, CHEVRON owned the rail car identified as CPDX 102012.

7.      On and prior to June 17, 2011, the aforesaid rail car was used by CHEVRON to transport anhydrous amonia.

8.      Prior to June 17, 2011, CHEVRON provided the aforesaid rail car to other shippers for the purpose of shipping hazardous materials by rail, including anhydrous amonia.

9.      Prior to June 17, 2011, CHEVRON inspected and approved the aforesaid rail car for the purpose of shipping anhydrous amonia by rail to New Carlisle, Indiana.

10.     Prior to June 17, 2011, CHEVRON released the aforesaid rail car for the purpose of shipping anhydrous amonia by rail to New Carlisle, Indiana.

11.     In the alternative, CHEVRON loaded and/or unloaded anhydrous amonia into the aforesaid rail car prior to June 17, 2011  for the purpose of shipping anhydrous amonia by rail to New Carlisle, Indiana..

12.     Prior to June 17, 2011, the aforesaid rail car was used by CHEVRON to ship anhydrous amonia by rail to DeBRUCE GRAIN, and/or GAVILON GRAIN in New Carlisle, Indiana.

**DeBRUCE GRAIN**

13.     On and prior to June 17, 2011, the defendant, DeBRUCE GRAIN, INC., a corporation (hereinafter "DeBRUCE GRAIN"), was a corporation, authorized to do business in the State of Indiana.

14.     On June 17, 2011, DeBRUCE GRAIN was doing business in the State of Indiana and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

15.     On or prior to June 17, 2011, DeBRUCE GRAIN took possession and control of the rail car identified as CPDX 102012.

16.     When DeBRUCE GRAIN took possession and control of the rail car identified as CPDX 102012, the aforesaid rail car was loaded, or partially loaded with anhydrous amonia.

17.     Prior to June 17, 2011, DeBRUCE GRAIN unloaded anhydrous amonia from the aforesaid rail car.

18.     Prior to June 17, 2011, DeBRUCE GRAIN inspected the aforesaid rail car before, during and/or after anhydrous amonia was unloaded from the rail car.

19.     On and prior to June 17, 2011, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

20.     On and prior to June 17, 2011, fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

21.     Prior to June 17, 2011, DeBRUCE GRAIN knew, or reasonably should have known, that the "O" rings on the pressure relief device of the aforesaid rail car were worn and deteriorated.

22.     On or prior to June 17, 2011, after rail car CPDX 102012 was unloaded, DeBRUCE GRAIN released the aforesaid rail car for movement in interstate commerce.

**GAVILON GRAIN**

23.    On June 17, 2011, the defendant, GAVILON GRAIN LLC ("GAVILON GRAIN"), was a corporation, authorized to do business in the State of Indiana, with offices in New Carlisle, Indiana.

24.    The defendant, GAVILON GRAIN is a successor in interest to DeBruce Grain, Inc.

25.    On June 17, 2011, GAVILON GRAIN, independently or as a successor in interest to DeBruce Grain, Inc., was doing business in the State of Indiana, maintained a registered agent in the State of Indiana, and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

26.    Prior to June 17, 2011, GAVILON GRAIN, took possession and control of the rail car identified as CPDX 102012.

27.    When GAVILON GRAIN took possession and control of the rail car identified as CPDX 102012, the aforesaid rail car was loaded, or partially loaded with anhydrous amonia.

28.    On or prior to June 17, 2011, GAVILON GRAIN  unloaded, or assisted in unloading, anhydrous amonia from the aforesaid rail car.

29.    On or prior to June 17, 2011, GAVILON GRAIN inspected the aforesaid rail car before, during and/or after anhydrous amonia was unloaded from the rail car.

30.    On and prior to June 17, 2011, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

31.     On and prior to June 17, 2011, fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

32.     On or prior to June 17, 2011, GAVILON GRAIN knew, or reasonably should have known, that fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

33.     On or prior to June 17, 2011, after CPDX 102012 was unloaded, GAVILON GRAIN released the aforesaid rail car for movement in interstate commerce.

**LAKE'S FARM SERVICE, INC, a corporation ("LFS");**

34.     On June 17, 2011, the defendant, LAKE'S FARM SERVICE, INC. ("LFS"), was a corporation, authorized to do business in the State of Indiana, with its principal place of business in New Carlisle, Indiana.

35.     On June 17, 2011, LFS was doing business in the State of Indiana, maintained a registered agent in the State of Indiana, and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

36.     Prior to June 17, 2011, LFS took possession and control of the rail car identified as CPDX 102012.

37.     When LFS took possession and control of the rail car identified as CPDX 102012, the aforesaid rail car was loaded, or partially loaded with anhydrous amonia.

38.     On or prior to June 17, 2011, LFS unloaded, or assisted in unloading, anhydrous amonia from the aforesaid rail car.

39.    On or prior to June 17, 2011, LFS inspected the aforesaid rail car before, during and/or after anhydrous amonia was unloaded from the rail car.

40.    On and prior to June 17, 2011, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

41.    On and prior to June 17, 2011, fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

42.    On or prior to June 17, 2011, LFS knew, or reasonably should have known, that "O" rings on the aforesaid rail car were worn and deteriorated.

43.    On or prior to June 17, 2011, after CPDX 102012 was unloaded, LFS released the aforesaid rail car for movement in interstate commerce.

**HELENA CHEMICAL**

44.    On June 17, 2011, the defendant, HELENA CHEMICAL COMPANY (HELENA), was a corporation, authorized to do business in the State of Indiana.

45.    On June 17, 2011, HELENA maintained an office in Carmel, Indiana with its principal place of business in Collierville, Tennessee.

46.    On June 17, 2011, HELENA was doing business in the State of Indiana, maintained a registered agent in the State of Indiana, and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

47.    Prior to June 17, 2011, HELENA owned LAKE'S FARM SERVICE, INC. ("LFS").

48.     Prior to June 17, 2011, HELENA, independently or by its subsidiary corporation, LFS, took possession and control of the rail car identified as CPDX 102012.

49.     When HELENA took possession and control of the rail car identified as CPDX 102012, the aforesaid rail car was loaded, or partially loaded with anhydrous amonia.

50.     On or prior to June 17, 2011, HELENA,  independently or by its subsidiary corporation, LFS, unloaded, or assisted in unloading, anhydrous amonia from the aforesaid rail car.

51.     On or prior to June 17, 2011, HELENA, independently or by its subsidiary corporation, LFS, inspected the aforesaid rail car before, during and/or after anhydrous amonia was unloaded from the rail car.

52.     On and prior to June 17, 2011, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

53.     On and prior to June 17, 2011,fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

54.     On or prior to June 17, 2011, HELENA knew, or reasonably should have known, that "O" rings on the aforesaid rail car were worn and deteriorated.

55.     On or prior to June 17, 2011, after rail car after CPDX 102012 was unloaded, HELENA released the rail car for movement in interstate commerce.

**SPECIALIZED STAFFING SOLUTIONS, LLC, a corporation ("SSSL");**

56.     On June 17, 2011, the defendant,  SPECIALIZED STAFFING SOLUTIONS, LLC ("SSSL"), was a corporation, authorized to do business in the State of Indiana, with its principal place of business in South Bend, Indiana.

57.     On June 17, 2011, SSSL was doing business in the State of Indiana, maintained a registered agent in the State of Indiana, and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

58.     Prior to June 17, 2011, SSSL took possession and control of the rail car identified as CPDX 102012.

59.     When SSSL took possession and control of the rail car identified as CPDX 102012, the aforesaid rail car was loaded, or partially loaded with anhydrous amonia.

60.     On or prior to June 17, 2011, SSSL unloaded, or assisted in unloading, anhydrous amonia from the aforesaid rail car.

61.     On or prior to June 17, 2011, SSSL inspected the aforesaid rail car before, during and/or after anhydrous amonia was unloaded from the rail car.

62.     On and prior to June 17, 2011, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

63.     On and prior to June 17, 2011, fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

64.     On or prior to June 17, 2011, SSSL knew, or reasonably should have known, that "O" rings on the aforesaid rail car were worn and deteriorated.

65.     On or prior to June 17, 2011, after CPDX 102012 was unloaded, SSSL released the aforesaid rail car for movement in interstate commerce.

66.     In the alternative, the plaintiff states that on June 17, 2011, the defendant, SPECIALIZED STAFFING SOLUTIONS, INC., independently or on behalf of SPECIALIZED

STAFFING SOLUTIONS, LLC, unloaded, inspected and approved the aforesaid rail car for the purpose of releasing the rail car into interstate commerce by rail.

67.     On or prior to June 17, 2011, after CPDX 102012 was unloaded, SPECIALIZED STAFFING SOLUTIONS, INC., released the aforesaid rail car for movement in interstate commerce.

## CHICAGO SOUTH SHORE & SOUTH BEND RAILROAD

68.     On June 17, 2011, the defendant, CHICAGO SOUTH SHORE & SOUTH BEND RAILROAD, an affiliate of ANACOSTIA & PACIFIC COMPANY, a corporation, ("CSS RR"); was a corporation, authorized to do business in the State of Indiana, with its principal place of business in Michigan City, Indiana.

69.     On June 17, 2011, the CSS RR was doing business in the State of Indiana and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

70.     On and prior to June 17, 2011, a certain rail car, identified as  CPDX 102012. was used to transport hazardous materials, including anhydrous amonia.

71.     On or prior to June 17, 2011, the CSS RR accepted the aforesaid rail car for movement in interstate commerce.

72.     On or prior to June 17, 2011, the CSS RR moved the aforesaid rail car from New Carlisle, Indiana to Stillwell, Indiana.

73.     On or prior to June 17, 2011, the CSS RR inspected the aforesaid rail car before it was transported to Stillwell, Indiana where it was interchanged with the GTW.

74.     At the time and place aforesaid, the "O" rings on the pressure relief device for the aforesaid rail car were worn and deteriorated.

75.     At the time and place aforesaid, fumes were emitted from the aforesaid rail car due to the worn and deteriorated "O" rings on the pressure relief device.

76.     At the time and place aforesaid, the CSS RR knew, or reasonably should have known, that "O" rings on the aforesaid rail car were worn and deteriorated.

77.     At the time and place aforesaid, the CSS RR released the rail car for movement in interstate commerce, even though the CSS RR knew, or should have known, that the "O" rings on the rail car were worn and deteriorated and that the rail car was emitting toxic fumes.

## SHRIEVE CHEMICAL

78.     On June 17, 2011, the defendant, SHRIEVE CHEMICAL COMPANY ("SHRIEVE"), was a corporation, authorized to do business in the State of Indiana, with its principal place of business in Woodlands, Texas.

79.     On June 17, 2011, SHRIEVE was doing business in the State of Indiana and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

80.     Prior to June 17, 2011, SHRIEVE entered into an agreement to ship anhydrous amonia to New Carlisle, Indiana

81.     Prior to June 17, 2011, SHRIEVE arranged to transport the anhydrous amonia to New Carlisle, Indiana by rail car.

82.    Prior to June 17, 2011, SHRIEVE, arranged for the anhydrous amonia to be transported, loaded and unloaded by shippers and handlers who were not properly trained and tested in the handling of hazardous materials.

83.    Prior to June 17, 2011, SHRIEVE knew, or reasonably should have known, that the anhydrous amonia would be loaded and/or unloaded by shippers and handlers who were not properly trained and tested in the handling of hazardous materials.

84.    On or prior to June 17, 2011, SHRIEVE knew, or reasonably should have known, the shippers and handlers hired to transport, load and unload the anhydrous amonia were not properly trained and tested to recognize and detect an "O" ring that was worn and deteriorated.

**DeBRUCE FERTILIZER**

85.    On June 17, 2011, the defendant, DeBRUCE FERTILIZER, INC., a corporation ("DeBRUCE FERTILIZER"), was a corporation, authorized to do business in the State of Indiana, with its principal place of business in Kansas City, Missouri.

86.    On June 17, 2011, DeBRUCE FERTILIZER was doing business in the State of Indiana and was then, and is now, subject to service of process and to the personal jurisdiction of this Court in the United States District Court for the Northern District of Indiana pursuant to 28 USCS §94 and 28 USCS §1391(b) and (c).

87.    Prior to June 17, 2011, DeBRUCE FERTILIZER entered into an agreement to ship anhydrous amonia to New Carlisle, Indiana.

88.    Prior to June 17, 2011, DeBRUCE FERTILIZER arranged to transport the anhydrous amonia to New Carlisle, Indiana by rail car.

-18-

89.     Prior to June 17, 2011, DeBRUCE FERTILIZER arranged for the anhydrous amonia to be transported, loaded and unloaded by shippers and handlers who were not properly trained and tested in the handling of hazardous materials.

90.     Prior to June 17, 2011, DeBRUCE FERTILIZER knew, or reasonably should have known, that the anhydrous amonia would be loaded and/or unloaded by shippers and handlers who were not properly trained and tested in the handling of hazardous materials.

91.     On or prior to June 17, 2011, DeBRUCE FERTILIZER knew, or reasonably should have known, that the shippers and handlers hired to transport, load and unload the anhydrous amonia were not properly trained and tested to recognize and detect an "O" ring that was worn and deteriorated.

## THE OCCURRENCE IN QUESTION

92.     On and prior to June 17, 2011, the defendants, CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; the CSS RR; SHRIEVE and DeBRUCE FERTILIZER; and each of them, had a duty to exercise ordinary care when loading and unloading rail cars, to refrain from causing damage to the rail cars they loaded and unloaded; to inspect the rail cars for leaks; to inspect the rail cars for worn and deteriorated "O" rings; to properly seal the contents before releasing the rail cars to a shipper; to detect and warn of any leaks or incomplete seals on rail cars containing hazardous materials and to refrain from placing into interstate commerce rail cars that had worn and deteriorated "O" rings on the pressure relief device.

93.     At the time and place aforesaid, the defendants, CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; the CSS RR; SHRIEVE  and DeBRUCE FERTILIZER; and each of them, had a duty to comply with the Federal Safety Appliance

-19-

Act, 49 USCA §20101 *et.seq*., the Code of Federal Regulations 49 CFR, Part 215 Railroad

Freight Car Safety Standards; the Code of Federal Regulations, 49 CFR Subchapter C -

Hazardous Materials Regulations, Parts 171 through 179, 172 174; the Code of Federal

Regulations 49 CFR Part 173 - Shippers- General Requirements for Shipments and

Packaging; and the standards, recommendations and guidelines in Appendix U of the AAR

Manual of Standards and Recommended Practices for the shipment of hazardous materials

by rail.

94.    After the aforesaid rail car left the possession and control of the defendants,

CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; CSS RR;

SHRIEVE and DeBRUCE FERTILIZER; the aforesaid rail car was transported to Battle

Creek, Michigan.

95.    On June 17, 2011, THOMAS WILSON was employed by the GTW as a

carman and he was working in the GTW Battle Creek rail yard.

96.    At the time and place aforesaid, THOMAS NELSON was exposed to, and

inhaled toxic fumes that were emitted from rail car CPDX102012.

97.    At the time and place aforesaid, THOMAS WILSON sustained various injuries

caused by the inhalation of toxic fumes from the aforesaid rail car.

98.    At the time and place aforesaid, the defendants, CHEVRON; DeBRUCE

GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; CSS RR; SHRIEVE and DeBRUCE

FERTILIZER were negligent in one or more of the following respects:

a.    In failing to use reasonably safe procedures when loading and
unloading hazardous materials;

b.    In failing to inspect, maintain and repair the rail cars it loaded and
unloaded;

c. In failing to inspect, maintain and repair the rail cars it released for movement in interstate commerce;

d. In failing to comply with 49 CFR Part 173, Shippers - General Requirements For Shipment and Packaging;

e. In failing to ensure compliance with 49 CFR Part 173 before releasing for movement of a rail car containing a hazardous substance.

f. In failing to segregate a rail car that was leaking toxic fumes, as required by 49 CFR Subpart D - General Segregation Requirements.

g. In failing to conduct a periodic inspection of the rail cars accepted for shipment in violation of 49 CFR §215.15 when an inspection would have revealed a leak in the subject rail car.

h. In failing to conduct an inspection of the railroad cars accepted in interchange, in violation of 49 CFR §215.13 when an inspection would have revealed a leak in the subject rail car.

i. In failing to comply with the Safety Appliance Act, 49 USCA Sec. 20101 *et. seq*.

j. In failing to comply with the Code of Federal Regulations, 49 CFR Subchapter C - Hazardous Materials Regulations, Parts 171 through 179.

k. In failing to ensure compliance with 49 CFR Subchapter C, Part 173, Shippers - General Requirements For Shipment and Packaging.

l. In failing to comply with the standards, recommendations and guidelines in Appendix U of the AAR Manual of Standards and Recommended Practices for the shipment of hazardous materials by rail.

m. In failing to use shippers and handlers who were properly trained and tested in accordance with 49 CFR Part 172.702 and Part 172.704.

99. As a direct and proximate result of one or more negligent acts or omissions of the defendants, CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; CSS RR; SHRIEVE and DeBRUCE FERTILIZER, as alleged herein, THOMAS

WILSON sustained various injuries due to inhalation of toxic fumes, including disability, pain and suffering, medical expenses, wage losses, an impaired earning capacity and other damages supported by the evidence and permitted by law.

WHEREFORE, the plaintiff, THOMAS WILSON, prays for judgment against defendants, CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; CSS RR; SHRIEVE and DeBRUCE FERTILIZER in a dollar amount sufficient to satisfy the jurisdictional limitations of this Court, plus whatever additional amount the Court and the jury shall deem proper as compensatory damages for personal injuries and pecuniary losses, plus the costs of this lawsuit and other recoverable damages permitted by law.

### Count IV
### (Shippers Strict Liability)

1-99.   The plaintiff, THOMAS WILSON, adopts and re-alleges paragraphs 1 through 109 of Count III as paragraphs 1 through 109 of Count IV as though fully set forth herein.

100.   One or more violations of the Code of Federal Regulations, as alleged in Count III, caused or contributed to the injuries and other damages sustained by THOMAS WILSON.

101.   The regulations in the Code of Federal Regulations, as identified in Count III, are federal safety statutes.

102.   The violation of a federal safety regulation in the Code of Federal Regulations, as identified in Count III, by a shipper of hazardous materials is *negligence per* se.

WHEREFORE, the plaintiff, THOMAS WILSON, prays for judgment against the defendants, CHEVRON; DeBRUCE GRAIN; GAVILON GRAIN; LFS; HELENA; SSSL; CSS RR; SHRIEVE and DeBRUCE FERTILIZER, in a dollar amount sufficient to satisfy the

jurisdictional limitations of this Court, plus whatever additional amount the Court and the jury shall deem proper as compensatory damages for personal injuries and pecuniary losses, plus the costs of this lawsuit and other recoverable damages permitted by law.

Respectfully submitted,

s/Laurence C. Acker
Laurence C. Acker
Harrington, Thompson, Acker & Harrington, Ltd.

**Attorneys for Plaintiff**
**Harrington, Thompson, Acker & Harrington, Ltd.**
**Robert B. Thompson**
**Laurence C. Acker**
**Kenneth J. Sophie, Jr**
**180 North Wacker Drive, 3rd Floor**
**Chicago, Illinois 60606**
**Telephone:  (312)332-8811**

**JURY DEMAND**

The Plaintiff, by his attorneys Harrington, Thompson, Acker, & Harrington, Ltd., hereby demands trial by jury.

Respectfully submitted,

By:   s/Laurence C. Acker
Laurence C. Acker
Harrington, Thompson, Acker & Harrington, Ltd.

**Attorneys for Plaintiff**
**Harrington, Thompson, Acker & Harrington, Ltd.**
**Robert B. Thompson**
**Laurence C. Acker**
**Kenneth J. Sophie, Jr**
**180 North Wacker Drive, 3rd Floor**
**Chicago, Illinois 60606**
**Telephone:  (312)332-8811**

-24-